John Caudill, Esq.
911 College Street, Suite 203
Bowling Green, KY 42301

Attorney for Plaintiff,
Elijah Blacksmith

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF KENTUCKY, BOWLING GREEN DIVISION

| | |
|---|---|
| ELIJAH BLACKSMITH,<br><br>    Plaintiff,<br><br>v.<br><br>SHAE FOLEY; in his individual and official capacity,<br><br>    Defendant. | Case No.:   1:26CV-18-GNS<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. 1983**<br><br>**JURY TRIAL DEMANDED** |

## I. NATURE OF THE CASE

1. This civil rights Complaint is brought about under 42 U.S.C. §1983 against the Defendant as a result of the Defendant's use of excessive force against the Plaintiff on or about July 9, 2023—falsely accusing the Plaintiff of disorderly conduct, resisting arrest, assaulting a police officer, and his unlawful arrest—all of which were prosecuted under false pretenses against Plaintiff until February 28, 2025, when said charges were dismissed without stipulation of probable cause. This Complaint also asserts various state law claims arising from the same case or controversy, to which supplemental jurisdiction would allow at the Court's discretion.

## II. JURISDICTION and PARTIES

2. This Court has jurisdiction over the claims in this complaint pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343(a)(3) (civil rights), 42 U.S.C. §§§1981 (equal rights), 1983 (civil action for deprivation of rights), and 1988 (proceedings in vindication of civil rights).

3. This action arises under the United States Constitution as applied to state and/or local authorities through 42 U.S.C. §1983.

4. This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. §1367(a), because they arise from the same case or controversy.

5. Plaintiff Elijah Blacksmith is a citizen and resident of Nashville, Tennessee. Plaintiff is an African American male and a member of a protected class. Plaintiff was thirty-two (32) at the time of the incident described in this Complaint.

6. Defendant Shae Foley was a Kentucky State Police officer in an appointed or elected capacity at all times relevant hereto. Defendant is a White male and a member of a protected class. Defendant was thirty-six (36) at the time of the incident as described in this Complaint. Defendant is further a citizen and resident of the Commonwealth of Kentucky.

### III. VENUE

7. Venue is proper in this district based on 28 U.S.C. §1391(b)(2); as Defendant is a resident of this district and a "substantial part of the events or omissions giving rise to the claim" occurred in this judicial district.

### IV. FACTUAL ALLEGATIONS

8. On or around the 9th day of July 2023, Elijah Blacksmith ("Plaintiff") and Kentucky State Police Officer Shae Foley ("Defendant") were traveling northbound on Interstate 165 (I-165) in Warren County, Kentucky, in separate vehicles.

9. Defendant was on duty acting under the color of state law in his official capacity as a law enforcement officer with the Kentucky State Police. Defendant had just left the scene of an accident when he observed Plaintiff and began to follow him.

10. Defendant continued to follow Plaintiff as Defendant took the exit ramp onto Nashville Road in Warren County, Bowling Green, Kentucky.

11. Defendant activated his emergency lights and began following Plaintiff. Plaintiff pulled onto the side of the road.

12. Defendant was travelling in an unmarked emergency vehicle and was further dressed in plain clothing that gave no indicia that he was a law enforcement officer. Defendant approached Plaintiff's vehicle on the driver's side.

13. Plaintiff—an African American male—suspicious of whether Defendant was an actual law enforcement officer, requested that Defendant call his supervisor to confirm that he was, in fact, a genuine law enforcement officer.

14. Defendant then commanded that Plaintiff exit the vehicle.

15. Plaintiff questioned Defendant as to the nature of the violation but got no response from the Defendant.

16. Defendant again commanded Defendant to exit the vehicle.

17. Kentucky State Police policy mandates that an officer in civilian clothing and unmarked vehicle call and wait for backup when a subject requests that the officer verify that he or she is a genuine law enforcement officer. Defendant did not call for backup until such time that he forcibly pulled Plaintiff from his vehicle.

18. Defendant opened Plaintiff's driver's side door, apprehended Plaintiff by his neck or collar, and began to strike Plaintiff physically; pulling him out of the vehicle.

19. At no time before or during the encounter was Plaintiff uncooperative, combative, resistant or threatening to the health, safety, or welfare of Defendant. Further, at no time did Plaintiff ever physically assault Defendant during the incident.

20. As Defendant pulled Plaintiff from his vehicle, Plaintiff began to film the incident using his smartphone.

21. As Defendant pulled Plaintiff from his vehicle, Plaintiff repeatedly asked Defendant, "What did I do?" "What did I do?". Plaintiff never received a response as these events were transpiring.

22. Throughout the incident, Plaintiff was in a passive position—holding his hands in the air and never physically resisting or taking aggressive actions towards the Defendant.

23. Once Defendant forcefully pulled Plaintiff from his vehicle, he put him in a chokehold; cutting off Plaintiff's airway and rendering him unable to breathe. Two other officers arrived at the scene and threatened to taze Plaintiff, despite no action being taken by Plaintiff to justify such result. Defendant forced Plaintiff to the ground, placed him in handcuffs, and then placed him in the back of Defendant's vehicle.

24. As a result of the assaultive conduct of the Defendant, Plaintiff was later treated at a local hospital for cuts and bruising throughout his body.

25. Defendant repeatedly struck the Plaintiff without provocation or justification when pulling Plaintiff from his vehicle.

26. After being assaulted multiple times by Defendant, Plaintiff was placed in the back of a police vehicle. At no time was Plaintiff informed of what conduct he was being arrested for.

27. Plaintiff was then transported to the Warren County Jail and lodged there.

28. Over two (2) hours after Plaintiff was lodged in the Warren County Jail, Defendant fabricated charges against Plaintiff.

29. Defendant had no reasonable suspicion or probable cause that a crime had been committed to justify the arrest, incarceration, or jailing of Plaintiff.

30. Plaintiff was not cited for any violation until after being placed in the Warren County Jail for over two (2) hours.

31. Defendant had no legal justification under the Constitution of the United States nor the laws of the Commonwealth of Kentucky to detain or arrest the Plaintiff at the time of the traffic stop.

32. Defendant had no cause to use force in arresting Plaintiff, seizing him, and extracting him from the vehicle.

33. Defendant's use of force was excessive.

34. Defendant's actions cause Plaintiff to suffer damages including but not limited to physical injury, extreme emotional distress, anguish, embarrassment, humiliation, and attorney's fees and expenses incurred in the defense of the criminal complaint lodged by Defendant against Plaintiff.

35. At all times relevant hereto, Defendant Shae Foley was acting under the color of law.

36. At no time did Defendant inform Plaintiff that he intended to place Plaintiff under arrest.

37. At no time did Defendant inform Plaintiff of the charge(s) for which he was being arrested.

38. Defendant charged Plaintiff with the following: (i) resisting arrest; (ii) disorderly conduct in the first (1st) degree; (iii) reckless driving; (iv) assault in the third (3rd) degree; and (v) following emergency vehicle too closely. A copy of the uniform citation is attached herewith, marked as "Exhibit A" for identification, and is further incorporated herein by reference.

39. On February 28, 2025, the Commonwealth of Kentucky filed a Motion to Dismiss the charges of resisting arrest, disorderly conduct, and other charges in Warren County District

Court. There was no stipulation as to probable cause in dismissal of criminal charges. As such, the statute of limitations as to the constitutional violations alleged herein did not begin until February 28, 2025.

## V. CAUSES OF ACTION

## COUNT I

### 42 U.S.C. §1983 – Deprivation of Constitutionally Protected Rights under the Fourth and Fourteenth Amendments to the United States Constitution

40. All previous paragraphs are incorporated by reference herein as though fully set forth.

41. Plaintiff makes a claim under 42 U.S.C. §1983 against the Defendant, when, acting under the color of state law, Defendant deprived Plaintiff of his clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution including, but not limited to:

      a. Freedom from unreasonable seizure, including the institution of a legal process without probable cause;

      b. Freedom from unreasonable searches;

      c. Freedom from the use of unreasonable, unjustified, and excessive force;

      d. Freedom from the abuse of process, unreasonable seizure and malicious prosecution under the Fourth Amendment;

      e. Freedom from deprivation of liberty and property without the due process of law;

      f. Freedom from summary punishment; and

      g. Freedom from arbitrary governmental activity that shocks the conscience of a civilized society.

42. The Fourth Amendment prohibits a police officer from using "unreasonable" force. U.S. Const. amend. IV. A police officer's use of excessive force violates the Fourth Amendment

when it is not "objectively reasonable," *Graham v. Connor,* 490 U.S. 386, 396 (1989). Reasonableness depends on "the totality of the circumstances," *Id.,* at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 9 (1985).

43. For a court "to assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment," *Barnes v. Felix,* 605 U.S. 73 (2025).

44. Defendant, while acting under the color of state law, violated Plaintiff's constitutional rights by unreasonably seizing Plaintiff and using excessive force against him, as described herein throughout, which resulted in Plaintiff's injuries.

45. Defendant's actions violated the constitutional rights guaranteed to Plaintiff by the Fourth Amendment of the United States Constitution.

46. Defendant's actions were not taken in good-faith and were in violation of clearly established law.

47. Defendant used excessive force at the time he unreasonably and unlawfully pulled Plaintiff from his vehicle and aggressively wrangled him to the ground, producing a taser.

48. Defendant's actions were unnecessary, unreasonable, unlawful, and unjustified under the totality of the circumstances and facts leading up to the climactic event, and were not taken in good faith.

49. The Defendant's use of force against Plaintiff was not reasonable under the circumstances and was excessive based upon the perspective of a reasonable member of law enforcement present at the scene.

50. Wherefore, as a direct and proximate result of the actions of Defendant, Plaintiff has suffered damages.

## COUNT II

### Assault and Battery

51. All previous paragraphs are incorporated herein by reference as though fully set forth.

52. The individual Defendant named in this Complaint is an employee, deputy and/or agent of the Commonwealth of Kentucky.

53. All acts of the individually named Defendant alleged above were conducted within the scope of the Defendant's employment or duties and were performed under the color of state law.

54. The actions of the individual defendant were intentional and in violation of known rights to Plaintiff.

55. On July 9, 2023, Defendant committed assault and battery upon Plaintiff when he intentionally advanced toward Plaintiff to apprehend him, inflicting bodily harm by forcibly dragging Plaintiff from his vehicle, repeatedly striking him in the process.

56. Plaintiff had a reasonable apprehension of imminent physical harm.

57. As a result of Defendant's intentional act, he initiated a harmful and offensive contact with Plaintiff.

58. Wherefore, as a direct and proximate cause of the actions of Defendant, Plaintiff suffered injuries.

## COUNT III

### False Imprisonment

59. All previous paragraphs are incorporated herein by reference as though fully set forth.

60. The individual Defendant named in this Complaint is an employee, deputy and/or agent of the Commonwealth of Kentucky.

61. All acts of the individually named Defendant alleged above were conducted within the scope of the Defendant's employment or duties and were performed under the color of state law.

62. The actions of the individual defendant were intentional and in violation of known rights to Plaintiff.

63. Defendant intended to confine Plaintiff when he placed handcuffs and further placed Plaintiff in the back of Defendant's vehicle.

64. Defendant further intended to confine Plaintiff when Plaintiff was transported to the Warren County Jail and lodged without any legal justification.

65. Plaintiff was confined.

66. Plaintiff was aware of the confinement.

67. Plaintiff suffered physical injuries and mental anguish as a result of the confinement.

68. Defendant had no probable cause or other legal justification for the confinement of Plaintiff.

69. Defendant had no legal authority for confining Plaintiff under the circumstances.

70. There was no warrant for arrest of the Plaintiff at the time of the confinement.

71. Wherefore, as a direct and proximate result of the actions of the Defendant, Plaintiff has suffered injuries because of his false imprisonment.

## COUNT IV

### Abuse of Process

72. All previous paragraphs are incorporated herein by reference as though fully set forth.

73. Defendant wrongfully employed a judicial proceeding against Plaintiff for ulterior purposes of: (i) summarily punishing Plaintiff for his speech and conduct; (ii) providing a *post hoc* justification for the unlawful arrest and the unlawful use of force; (iii) to pressure Plaintiff into settlement of any liability arising from Defendant's unlawful conduct; and (iv) retaliation against Plaintiff for seeking discovery to which he was entitled in the criminal prosecution.

74. The ulterior purposes as stated above are not ones for which the criminal proceedings were designed and are improper uses of a criminal proceeding.

75. Defendant willfully and wrongfully employed process against Plaintiff under circumstances that are not part of a regular conduct of the proceeding, and in a way that was not proper in the regular conduct of those proceedings.

76. Wherefore, as a direct and proximate result of the actions of the Defendant, Plaintiff has suffered injuries due to the abuse of process.

## COUNT V

### Malicious Prosecution

77. All previous paragraphs are incorporated herein by reference as though fully set forth.

78. Defendant initiated a judicial proceeding against Plaintiff in having the Commonwealth of Kentucky prosecute.

79. Defendant lacked probable cause in bringing about these charges.

80. On February 28, 2025, the Commonwealth of Kentucky filed a Motion to Dismiss the charges of resisting arrest, disorderly conduct, and other charges in Warren County District Court. There was no stipulation as to probable cause in dismissal of criminal charges.

81. Plaintiff suffered damages as a result of this malicious prosecution including, but not limited to lost wages, legal fees, emotional distress, and punitive damages.

82. Wherefore, as a direct and proximate result of the actions of the Defendant, Plaintiff has suffered injuries due to the malicious prosecution of charges lacking probable cause.

## COUNT VI

### Intentional Infliction of Emotional Distress

83. All previous paragraphs are incorporated herein by reference as though fully set forth.

84. Defendant's conduct during the incident on July 9, 2023, was intentional or reckless.

85. The conduct of Defendant was so extreme and outrageous as to shock the conscience of a reasonable person under the circumstances.

86. There is a causal connection between the conduct of Defendant and the perpetuated emotional distress suffered by Plaintiff.

87. The emotional distress suffered by Plaintiff was so severe that it caused an adverse effect on Plaintiff's mental and physical health.

88. Wherefore, as a direct and proximate result of the actions of the Defendant, Plaintiff has suffered such severe emotional distress stemming from the incident giving rise to the causes of action and further perpetuated by the prosecution of charges related to the incident.

## REQUEST FOR PUNITIVE DAMAGES

89. A jury may be permitted to assess punitive damages in a 42. U.S.C. §1983 action when the defendant's conduct involves "reckless or callous indifference to the plaintiff's federally protected rights," as well as when it is "motivated by evil motive or intent" *Smith v. Wade,* 461 U.S. 30, 50 (1983).

COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. 1983
- 11 -

90. The conduct of Defendant was willful, malicious, oppressive, and/or grossly negligent and punitive damages should be assessed to discourage similar conduct in the future by this and other individuals.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment against Defendant for:

a)  Compensatory damages, or in the alternative, nominal damages, and punitive damages in an amount to be proven to the Court and determined by the jury;

b)  A trial by jury representing a fair cross-section of the community;

c)  For leave to amend the Complaint and to join additional parties as may become advisable after having the opportunity to participate in discovery;

d)  Costs and expenses, including reasonable attorney's fees; and

e)  Any and all other such general or specific relief that the Court may deem appropriate or that Defendant may prove so entitled.

Dated: February    , 2026

Respectfully Submitted,

**CAUDILL LAW OFFICE, PLLC**
911 College St., Suite 203
Bowling Green, KY 42101
(270) 779-9290
*Attorneys for Plaintiff*

By:_____,
John Caudill, Esq.
john@caudill.legal