UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:26-CV-00018-GNS

ELIJAH BLACKSMITH PLAINTIFF

v.

SHAE FOLEY,
in his individual and official capacity DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Partial Motions to Dismiss (DN 5, 6). The motions are ripe for adjudication.

## I. STATEMENT OF FACTS AND CLAIMS

This action arises out of the traffic stop and arrest of Plaintiff Elijah Blacksmith ("Blacksmith") by Defendant Kentucky State Police Trooper Shae Foley ("Foley"), and the state criminal prosecution of Blacksmith that followed. (Compl. ¶ 1, DN 1). The Complaint alleges that on July 9, 2023, Blacksmith was driving on the interstate in Warren County, Kentucky, when Foley pulled over Blacksmith's vehicle. (Compl. ¶¶ 8-11). Foley allegedly first ordered, then physically pulled, Blacksmith from the vehicle, before repeatedly physically striking him and putting him in a chokehold—all despite the latter's non-resistance and non-aggression. (Compl. ¶¶ 13-22). Blacksmith was handcuffed, arrested, treated at a local hospital, and then taken to the Warren County Jail. (Compl. ¶¶ 23-27). "[O]ver two (2) hours" later, Foley allegedly "fabricated charges" against Blacksmith, issuing a citation that falsely charged Blacksmith with various charges, including resisting arrest, reckless driving, and assault. (Compl. ¶¶ 28, 38). Nineteen months later, "[o]n February 28, 2025, the Commonwealth of Kentucky filed a Motion to Dismiss the charges of resisting arrest, disorderly conduct, and other charges in Warren County District

Court. There was no stipulation as to probable cause in dismissal of criminal charges." (Compl. ¶ 38).

Blacksmith brought this action on Feb. 11, 2026, asserting federal civil rights claims under Section 1983, and related state law claims, against Foley in both his individual and official capacities. (Compl. ¶¶ 1, 40-88). Specifically, Blacksmith brought: (i) federal constitutional claims under 42 U.S.C. § 1983, including excessive force, false imprisonment, abuse of process, and malicious prosecution; and Kentucky state law claims for: (ii) assault and battery; (iii) false imprisonment; (iv) abuse of process; (v) malicious prosecution; and (vi) intentional infliction of emotional distress. (Compl. ¶¶ 40-88). Foley moved to dismiss all individual capacity claims for failure to state a claim, and to dismiss all official capacity claims for both lack of subject matter jurisdiction and failure to state a claim. (Def.'s Mem. Supp. Partial Mot. Dismiss 1, DN 5-1 [hereinafter Def.'s Indv'l Cap. Mot. Dismiss]; Def.'s Partial Mot. Dismiss 1, DN 6 [hereinafter Def.'s Off'l Cap. Mot. Dismiss]). Blacksmith responded to the individual capacity motion only, and Foley replied. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 1, DN 7; Def.'s Reply Partial Mot. Dismiss 1, DN 8). Blacksmith did not respond to the official capacity motion, and the time to do so has passed. The motions are therefore ripe for adjudication.

## II. DISCUSSION

### A. Motion to Dismiss Official Capacity Claims (DN 6)

Foley has moved to dismiss all claims against him in his official capacity, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Def.'s Off'l Cap. Mot. Dismiss 1). Threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should generally be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946).

### 1. *Standard of Review — Fed R. Civ. P. 12(b)(1)*

Challenges to subject matter jurisdiction come in several varieties. Facial attacks challenge a plaintiff's establishment of jurisdiction in their complaint, and assume as true the facts alleged. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). Factual attacks contest the existence of factual prerequisites to jurisdiction, and empower a court to resolve the factual disputes affecting any jurisdictional prerequisites. *See id.*; *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A plaintiff generally bears the burden in both these situations. *See Bell*, 327 U.S. at 682.

Eleventh Amendment sovereign immunity can serve as a basis for a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Satkowiak v. Marshall*, 771 F. Supp. 3d 937, 943-44 (E.D. Mich. 2025). The Eleventh Amendment is "a true jurisdictional bar that . . . once raised as a jurisdictional defect, must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). "[W]hile the party invoking jurisdiction has the burden of establishing jurisdiction, [however,] a defendant invoking sovereign immunity has the burden to show it applies." *Doe v. Sup. Ct. of Ky.*, 482 F. Supp. 3d 571, 581 (W.D. Ky. 2020) (citing *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006)).

### 2. *Eleventh Amendment Immunity*

Foley makes a facial attack on jurisdiction for the official capacity claims—accepting the factual allegations as true for purposes of the motion. *See Satkowiak*, 771 F. Supp. 3d at 944 (finding that the defendants' motion to dismiss made a facial attack where it "argue[d] that, even assuming all facts within [the] Complaint are true, . . . [the] claims are barred by Eleventh Amendment sovereign immunity"). Foley argues that such official capacity claims are in effect

claims against the Kentucky State Police ("KSP"), therefore against the state, and barred by the Eleventh Amendment. (Def.'s Off'l Cap. Mot. Dismiss 2-5).

Blacksmith did not respond to the motion to dismiss the official capacity claims, or offer any argument against dismissing those claims, and thus is deemed to have conceded the issue and abandoned all claims against Foley in his official capacity. *See Bradley v. Jefferson Cnty. Pub. Schs.*, 598 F. Supp. 3d 552, 566 (W.D. Ky. 2022); *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming district court's conclusion that plaintiff abandoned certain claims by failing to raise them in his brief opposing the motion to dismiss); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (noting that where a plaintiff fails to respond to an argument in a motion to dismiss, it may be assumed that he concedes this point and abandons the claim); *see also* LR 7.1(c) ("Failure to timely respond to a motion may be grounds for granting the motion.").

Moreover, even if Blacksmith had not abandoned these claims, this Court has recognized that "[i]t is well-established that the Kentucky State Police constitutes an 'arm of the state' for Eleventh Amendment purposes." *Tucker v. Ky. State Police Post #4*, No. 3:23-CV-P328-JHM, 2023 WL 6929815, at *2 (W.D. Ky. Oct. 19, 2023) (citations omitted); *accord Barnes v. Hamilton*, 946 F.2d 894, 1999 WL 203113, at *2 (6th Cir. 1991). Suits against state officials in their official capacities are suits against the state, barred by Eleventh Amendment immunity absent the state's consent or Congressional abrogation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Congress in enacting Section 1983 did not abrogate states' Eleventh Amendment sovereign immunity, nor has Kentucky waived its immunity from such suits. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citation omitted); *Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004) (citation omitted). Similarly, "[t]he Kentucky General Assembly has never expressly stated or otherwise suggested

that it intended to waive sovereign immunity for tort claims against the government." *Karsner v. Hardin Cnty.*, No. 3:20-CV-125-RGJ, 2021 WL 886233, at *5 (W.D. Ky. Mar. 9, 2021) (finding Kentucky had not waived its immunity from a Kentucky state-law malicious prosecution claim); *Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609, 613-14 (W.D. Ky. 2011) (same for outrage, assault, and battery); *Reedy v. Ratley*, No. 4:20-CV-00173-GNS-HBB, 2021 WL 1692153, at *3 (W.D. Ky. Apr. 29, 2021) (same for tort claims including abuse of process). Accordingly, Foley's motion to dismiss the official capacity claims against him is granted.

**B. Motion to Dismiss Individual Capacity Claims (DN 5)**

Foley has also moved to dismiss all claims against him in his individual capacity for failure to state a claim on which relief can be granted. (Def.'s Indv'l Cap. Mot. Dismiss 1). Specifically, he argues that all claims except malicious prosecution are outside the statute of limitations, that the abuse of process and intentional infliction of emotional distress claims are inadequately pleaded, and that the malicious prosecution claim fails as a matter of law. Blacksmith does not contest the length of the limitations period, but seeks equitable tolling for all claims that would otherwise be time-barred, disputes the accrual date of the abuse of process claim, and argues that all claims are adequately pleaded. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 12).

***1. Jurisdiction***

As to the individual capacity claims, the Court exercises subject-matter jurisdiction over the Section 1983 claim based upon federal question jurisdiction, and supplemental jurisdiction over the state-law claims arising from the same case or controversy. *See* 28 U.S.C. §§ 1331, 1367(a).

### 2. *Standard of Review — Fed. R. Civ. P. 12(b)(6)*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, a court must "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (internal citation omitted) (quoting *Twombly*, 550 U.S. at 555).

"Although the statute of limitations is an affirmative defense that a plaintiff ordinarily need not plead to state a claim, dismissal of the plaintiff's claim is appropriate when 'the allegations in the complaint affirmatively show that the claim is time-barred.'" *Wershe v. City of Detroit*, 112 F.4th 357, 364 (6th Cir. 2024) (citation omitted). While "courts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date[,]" where the parties dispute only which date "has legal significance as the accrual date[,]" that "is a question of law, not of fact, so resolution of the issue on a motion to dismiss [is] appropriate." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 464 (6th Cir. 2016) (citations omitted).

### 3. *Statute of Limitations and Accrual*

"The statute of limitations for [Section] 1983 claims is the relevant state's statute of limitations for personal-injury torts." *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Although the statute of limitations turns on state law, the question of when a Section 1983 claim accrues to trigger the running of the limitations period is a matter of federal law. *Wallace*, 549 U.S. at 388. "[I]t is well settled that [Section] 1983 claims accrue 'when the plaintiff has a complete and present cause of action'; that is, 'when the plaintiff can file suit and obtain relief.'" *Codrington v. Dolak*, 142 F.4th 884, 891 (6th Cir. 2025) (quoting *Wallace*, 549 U.S. at 388). For state law claims, both the state of limitations and the accrual date are governed by state law. *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 604 (6th Cir. 2025) (citation omitted).

Blacksmith's Section 1983 claims are subject to Kentucky's one-year statute of limitations for personal injury actions. KRS 413.140(1)(a); *Brown v. Wiggington*, 981 F.2d 913, 914 (6th Cir. 1992). The Kentucky state-law claims for assault, battery, false imprisonment, malicious prosecution, and abuse of process are likewise subject to a one-year limitations period. *Dunn v. Felty*, 226 S.W.3d 68, 70 (Ky. 2007) (citing KRS 413.140(1)(a), (c)) (assault, battery, and false imprisonment); *Trent v. Trulock*, No. 1:19-CV-00005-GNS-HBB, 2021 WL 848642, at *2 (W.D. Ky. Mar. 4, 2021) (first citing KRS 413.140(1)(a); and then citing *Maqablh v. Heinz*, No. 3:16-CV-289-JHM, 2016 WL 7192124, at *3-8 (W.D. Ky. Dec. 12, 2016)) (abuse of process); KRS 413.140(1)(c) (malicious prosecution).

### 4. *Excessive Force, Assault, Battery, and False Imprisonment*

Beginning with the Section 1983 claims for excessive force and false imprisonment under the Fourth Amendment, and the state law claims for assault, battery, and false imprisonment, Foley argues that these are time-barred. (Def.'s Indv'l Cap. Mot. Dismiss 4). A Section 1983 claim for

excessive force in effecting an arrest accrues at the time of arrest. *Dibrell v. Rex*, No. 25-5334, 2025 WL 3285587, at *3 (6th Cir. 2025) (citing *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)). Kentucky assault and battery claims, too, are held to have accrued at the time of the injury. *Dunn v. Felty*, 226 S.W.3d 68, 73 (Ky. 2007). False imprisonment claims under both Section 1983 and Kentucky state law are premised upon "detention without legal process," and accordingly accrue "once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 289 (Section 1983 action); *Dunn*, 226 S.W.3d at 72 (same for the corresponding Kentucky state-law claim).

The Complaint does not identify the precise date of arraignment, referencing only Foley's issuance of a "uniform citation" that "charged [Blacksmith]" with offenses "over two (2) hours after" Blacksmith arrived at the Warren County Jail on the day of his arrest in July 2023, and then jumping forward in time to the end of the criminal case in February 2025. (Compl. ¶¶ 28, 38-39). Given that the limitations period would have expired one year after the date of arraignment, however, this action filed more than 31 months after Blacksmith alleges being "charged" by Foley, his claim would only avoid a time-bar if arraignment had been delayed by more than 19 months after issuance of charges. There is no way to plausibly read the Complaint's factual allegations as supporting an inference of such a delay. Both the federal and state law claims based on false imprisonment, as well as the federal excessive force and state assault and battery claims, are clearly outside the limitations period.

Moreover, Blacksmith does not argue that these claims did not accrue more than one year before the action was filed, relying instead on his request for equitable tolling. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 3 (requesting equitable tolling while characterizing the six-month period

beginning in February 2024 as "the exact window in which the statute of limitation would have otherwise expired."); Pl.'s Resp. Def.'s Partial Mot. Dismiss 4 (stating that the argument that certain claims did not accrue until the criminal case terminated does not apply "not to the excessive force, assault, battery, or false imprisonment claims")).

**5. *Equitable Tolling***

Blacksmith's response introduces a request for equitable tolling of the limitations period. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 2). Foley in his reply opposes tolling, and also objects to Blacksmith's introduction of new facts in the response. (Def.'s Reply Partial Mot. Dismiss 2).

Federal courts look to state equitable tolling doctrine for Section 1983 claims, as well as for state law claims. *Coleman*, 130 F.4th at 607 (citations omitted) (Section 1983); *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1012 (6th Cir. 2024) (citations omitted) (state law claims). Under Kentucky law:

> Equitable tolling pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action. To be entitled to equitable tolling, a litigant must show (1) that he has been *pursuing his rights diligently*, and (2) that some *extraordinary circumstance* stood in his way and prevented timely filing, with those circumstances being beyond the litigant's control.

*MGG Inv. Grp. LP v. Bemak N.V., Ltd.*, 671 S.W.3d 76, 88 (Ky. 2023) (emphasis added) (internal quotation marks omitted) (internal citations omitted) (citation omitted). These two components are "not factors to be considered, but rather are necessary prerequisites for the application of equitable tolling." *Id.* at 88 (citation omitted). The plaintiff seeking equitable tolling has the burden to show that it is warranted. *Williams v. Hawkins*, 594 S.W.3d 189, 194 (Ky. 2020). Blacksmith has not met either requirement.

As a preliminary matter, as Foley notes, Blacksmith's response brief asserts new facts in support of the argument for equitable tolling, which do not appear in the Complaint. (Def.'s Reply Partial Mot. Dismiss 2 (citing *Cotterman v. City of Cincinnati*, No. 21-3659, 2023 WL 7132017, at *4 (6th Cir. Oct. 30, 2023))). "Although plaintiffs need not plead a claim's timeliness, defendants can still move to dismiss a complaint based on the statute of limitations if the complaint affirmatively alleges 'facts showing that [the plaintiff] did not sue in time.'" *Coleman*, 130 F.4th at 607 (quoting *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024)). When plaintiffs "plead themselves out of court" in this way, "the burden switches to them to allege facts that plausibly 'establish an exception to the statute of limitations' (such as equitable tolling)." *Id.* (citations omitted). To meet that burden, however, a plaintiff must rely on facts in the Complaint, and if he needs "to add more facts to bolster [his] equitable-tolling argument, [he] should . . . move[] to amend [his] complaint." *Id.* (citation omitted). Even considering the unpleaded facts in Blacksmith's response, however, they still fail to circumvent the limitations defense.

**a. Extraordinary Circumstances**

Beginning with the second prong of the analysis, Blacksmith asserts that there are two "extraordinary circumstances" that support his request for equitable tolling: first, a six-month period of medical incapacity of his attorney beginning in February 2024; and second, "the pending felony charges" themselves, which were not terminated until February 2025. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 3, 6).

Without diminishing the severity of the medical situation described, it is simply unnecessary to determine whether equitable tolling would be available on this basis. Each of Blacksmith's claims are either already timely, or outside the limitations period by a year and a half; none are short by anything approaching six months or less. Accordingly, even if the limitations

period could have been tolled on this basis for six months starting in February 2024, it would not make a difference for any of Blacksmith's claims.

Turning to the second proposed "extraordinary circumstance," Blacksmith argues that the pending criminal charges themselves constituted exceptional circumstances justifying equitable tolling until the criminal case ended in February 2025. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 6-7). Citing to federal constitutional cases on compelled self-incrimination, Blacksmith contends that pursuing a civil action concurrently with the criminal case would have confronted him with an unconstitutional "Hobson's choice" of either pursuing his civil remedies or protecting his right against self-incrimination in the criminal proceedings. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 6-7 (citing *Garrity v. New Jersey*, 385 U.S. 493, 497-98 (1967); *Gardner v. Broderick*, 392 U.S. 273, 277-78 (1968))).

Blacksmith does not identify any cases, Kentucky or otherwise, that show equitable tolling being applied in remotely comparable circumstances. To the contrary, the U.S. Supreme Court has noted a lack of support "for the far-reaching proposition that equitable tolling is appropriate to avoid the risk of concurrent [civil and criminal] litigation[,]" and stated that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace*, 549 U.S. at 396. As noted in *Wallace*, if a criminal defendant seeks to bring a concurrent Section 1983 civil claim arising out of the same factual predicate as their criminal case, "it is within the power of the district court, and *in accord with common practice*, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id.* at 393-94 (emphasis added) (citations omitted).[1] The principle *Wallace* describes "has been widely adopted

[1] For the same reasons that *Wallace* rejects this approach, the unavailability of equitable tolling on this basis is not "inconsistent with the federal policy underlying" Section 1983, so as to necessitate deviating from state tolling principles. *See Wershe*, 112 F.4th at 366 (noting that federal courts

across the Sixth Circuit, including by this Court." *Sharp v. Bowling Green Police Dep't*, No. 1:23-CV-00174-GNS, 2024 WL 5056638, at *9 (W.D. Ky. Dec. 10, 2024) (collecting cases). Ultimately, in Kentucky, "equitable tolling is quite limited." *Chabad of Prospect, Inc. v. Louisville Metro. Bd. of Zoning Adjustment*, 623 F. Supp. 3d 791, 800 (W.D. Ky. 2022) (citing *Williams*, 594 S.W.3d at 194). Therefore, the mere pendency of a criminal case is not a sufficient "extraordinary circumstance" to justify equitably tolling the statute of limitations for those claims that accrued at or just after Blacksmith's arrest.

**b. Diligent Pursuit of Rights**

Blacksmith's equitable tolling argument also fails as to the other prong of the analysis—diligence in pursuing his rights. Blacksmith argues that he has satisfied this prong because he was "actively defending against pending felony charges that arose from the same encounter" and that his attorney was "simultaneously investigating the civil claims, obtaining body worn camera footage, medical records, and other information related to this incident." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 3). The Complaint alleges none of these facts—only that charges were eventually dismissed on motion of the prosecutor in February 2025. (Compl. ¶ 39). Even if these facts had been in the Complaint, they do not demonstrate the diligence necessary for equitable tolling. As set forth above, the concurrent pendency of the criminal case is not an extraordinary circumstance justifying delay of filing the civil claims, and it is common practice to stay such timely-filed civil claims if they relate to rulings that are likely to be made in a pending state criminal case. What Blacksmith himself calls his "*decision to defer filing* until the criminal proceedings concluded" is not diligent pursuit of his rights in relation to the civil claims for which the statute of limitations

---

apply state equitable tolling principles to Section 1983 claims, except where doing so is inconsistent with federal policy).

had already begun running just after his arrest. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 3 (emphasis added)).[2]

As a result of the foregoing, equitable tolling is not available, and the claims that accrued in July 2023 are barred by the statute of limitations. The Section 1983 claims under the Fourth Amendment for excessive force and false imprisonment, and the state law assault, battery and false imprisonment claims, are dismissed.

### 6. *Abuse of Process*

Blacksmith also seeks to assert a claim for "abuse of process," under both Section 1983 and Kentucky state law. (Compl. ¶¶ 41(d), 72-76). Foley argues that this claim is both time-barred and inadequately pleaded. (Def.'s Indv'l Cap. Mot. Dismiss 5-7). Blacksmith responds by arguing that the abuse of process claim did not *accrue* until the criminal proceedings terminated, or if it did, that equitable tolling should apply. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 2, 4-6).

First, the "alleged federal abuse-of-process claim can be easily disposed of," as the Sixth Circuit "has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983." *Moore v. Wesbanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015) (citations omitted); *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014) ("[T]he district court properly dismissed the claim

---

[2] Blacksmith's additional argument that this delay was "necessary to avoid a *Heck* bar that would have rendered the civil claims non-cognizable" is similarly unavailing. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 3 (citing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994))). In deciding when certain claims accrued, the U.S. Supreme Court in *Wallace* specifically rejected what it called "a principle that goes well beyond *Heck*: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Wallace*, 549 U.S. at 393. While different principles apply to accrual of claims analogous to *malicious prosecution*—like that in *Heck*, and discussed further below—*Heck* does not affect the accrual date of the other claims here. Those claims arising out of the arrest had already accrued, and the statute of limitations was already running during the period in which Blacksmith chose to defer filing his civil suit.

because a federal abuse of process claim does not exist in the law of this circuit." (citations omitted)); (Compl. ¶ 41(d)). Accordingly, the federal abuse of process claims is dismissed.

Turning to the state law claim, Blacksmith contends that the abuse of process claim did not accrue while the criminal charges against him remained pending: "[B]ecause the Plaintiff remained in legal jeopardy until the dismissal of the felony charges in February 2025, his [abuse of process] claim[] *did not accrue* until that date." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 6 (emphasis added)). To the contrary, this Court has repeatedly found that Kentucky abuse of process claims are "generally held to accrue . . . from the termination of the *acts* which constitute the abuse complained of, and not from the completion of the *action* in which the process issued." *Dickerson v. City of Hickman*, No. 5:08-CV-P53-R, 2010 WL 816684, at *5 (W.D. Ky. Mar. 4, 2010) (alteration in original) (emphasis added) (quoting J. A. Bock, Annotation, *When Statute of Limitations Begins to Run Against Action for Abuse of Process*, 1 A.L.R.3d 953 § 1 (1965)); *Trent*, 2021 WL 848642, at *2; *Maqablh*, 2016 WL 7192124, at *8. This is because, "[u]nlike an action for malicious prosecution[,] where a legal termination of the prosecution complained of is essential, in an action for abuse of process it is not necessary, ordinarily, to establish that the action in which the process issued has terminated unsuccessfully." *Dickerson*, 2010 WL 816684, at *5 (quoting 1 A.L.R. 3d 953 § 1).

Blacksmith identifies no contrary authority applying his preferred accrual rule to a Kentucky abuse of process claim, or to an abuse of process claim at all. Rather, he relies on *McDonough v. Smith*, 588 U.S. 109 (2019), and *Heck v. Humphrey*, 512 U.S. 477 (1994). (Pl.'s Resp. Def.'s Partial Mot. Dismiss 4-6). This reliance would be correct as to his malicious prosecution claims—the timeliness of which Foley, rightly, does not challenge—but it is misplaced for abuse of process. First, both *McDonough* and *Heck* addressed accrual of claims under federal,

not Kentucky, law. Second, both cases dealt with claims that the U.S. Supreme Court found most analogous to *malicious prosecution*, not abuse of process. *Heck*, 512 U.S. at 484; *McDonough*, 588 U.S. at 116. The logic of both cases hinged on the analogy to malicious prosecution, and the fact that "favorable termination" of the underlying criminal proceeding is a necessary element to prove such claims. Their logic does not extend to a claim for abuse of process. *Heck*, 512 U.S. at 485 n.5 (noting in regard to "abuse of process," that "favorable termination of prior proceedings is not an element of that cause of action—but neither is an impugning of those proceedings one of its consequences.").[3]

The state law abuse of process claim thus accrued, and the one-year statute of limitations began to run, at the time that Foley's complained-of *acts* concluded. There is no activity attributed to Foley, nor any involvement in the criminal case suggested, after the issuance of a citation presenting charges shortly after Blacksmith's arrest on July 9, 2023. (Compl. ¶¶ 28, 38). The abuse of process claim therefore accrued at that time, and the limitations period expired a year later. For the reasons discussed above, Blacksmith's request for equitable tolling is also unavailing. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 12). Because the claim is time-barred, it is unnecessary to

[3] Blacksmith in his response also seeks to recast his allegations as additionally raising a "claim premised on fabricated-evidence" like that in *McDonough*. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 4). The Complaint, however, is devoid of factual allegations that would support such a claim under either the Fourteenth or Fourth Amendments, separate and apart from the malicious prosecution claim. The Complaint alleges that Foley "fabricated *charges*," but nowhere speaks of *evidence* used in a proceeding to support either conviction or detention. (Compl. ¶ 28); *compare Clark v. Abdallah*, 131 F.4th 432, 447 (6th Cir. 2025) (a Fourteenth Amendment fabrication-of-evidence claim deals with the right to a fair *trial*, and requires the plaintiff to show a reasonably likelihood that knowingly fabricated evidence affected the jury's decision to convict him), *with Clark*, 131 F.4th at 447 (a Fourth Amendment fabrication-of-evidence claim deals with *detention* on the basis of fabricated evidence, and arises "when probable cause [for detention] rests on fabricated evidence presented to a grand jury or to a judge determining probable cause."). To the extent that Blacksmith purports to have brought a separate fabricated-evidence claim under Section 1983, apart from his malicious prosecution claims, such claim is dismissed.

consider Foley's additional argument that the claim was also inadequately pleaded. The abuse of process claim is accordingly dismissed.

### 7. *Intentional Infliction of Emotional Distress*

Blacksmith also brings a Kentucky state law claim of intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 83-88). Foley argues that this claim is both time-barred and inadequately pleaded. (Def.'s Indv'l Cap. Mot. Dismiss 7-9). Unlike the one-year limitations period for the other claims in this action, the statute of limitations for an IIED claim in Kentucky (also known as the tort of "outrage") is five years. *Graham v. Todd Cnty.*, No. 1:20-CV-00210-GNS-HBB, 2024 WL 1446464, at *3 n.4 (W.D. Ky. Apr. 3, 2024) (citing *Wright v. Swigart*, No. 2016-CA-000854-MR, 2018 WL 565824, at *3 n.2 (Ky. App. Jan. 26, 2018)); *accord Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984). Although this claim would therefore not technically be time-barred, Kentucky law is clear that:

> [W]hile there is a much longer statute of limitations than for traditional torts . . . a complaint cannot be saved from limitations by pleading intentional infliction of emotional distress to reach the longer statute when the facts support a claim for a more traditional personal injury tort with mental pain and suffering as part of the damages rather than severe emotional distress caused by outrageous conduct.

*Shaw v. Handy*, 588 S.W.3d 459, 461-62 (Ky. App. 2019) (quoting *Childers v. Geile*, 367 S.W.3d 576, 582-83 (Ky. 2012)). When "a set of facts establishes a traditional tort, by definition it *cannot* establish intentional infliction of emotional distress." *Id.* at 462 (quoting *Childers*, 367 S.W.3d at 582. In other words, "a plaintiff may not maintain an IIED claim in addition to another tort, such as assault or battery, under 'a single set of facts.'" *Noe v. Kennedy*, No. 1:24-CV-00041-GNS, 2024 WL 4369886, at *5 (W.D. Ky. Oct. 1, 2024) (quoting *Childers*, 367 S.W.3d at 581); *see also Shaw*, 588 S.W.3d at 462 (dismissing IIED claim because it was based on the same facts supporting time-barred claims for excessive force, assault, battery, and negligence); *Graham*, 2024 WL

1446464, at *3 n.4 (same result where facts supported Section 1983 and state law malicious prosecution claims). Nonetheless, "[t]he tort of [IIED] is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants *solely intended* to cause extreme emotional distress.'" *Peach v. Hagerman*, 675 F. Supp. 3d 755, 777 (W.D. Ky. 2023) (emphasis added) (quoting *Estep v. Combs*, 366 F. Supp. 3d 863, 887 (E.D. Ky. 2018); *see also Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993) ("[W]here an actor's conduct amounts to the commission of one of the traditional torts . . . for which recovery of emotional distress is allowed, *and the conduct was not intended only to cause extreme emotional distress in the victim*, the tort of outrage will not lie." (emphasis added)).

The Complaint's allegations encompass traditional torts like assault, battery, false imprisonment, and malicious prosecution. The Complaint also does not allege, even in conclusory fashion, that Foley's conduct was intended solely to cause emotional distress in Blacksmith, despite Blacksmith's repeated representations to the contrary in his response.[4] While stating in

---

[4] In his response, Blacksmith repeatedly and inaccurately represents the Complaint as having stated such sole intent, and urges that the Court is required to accept this as true:

(1) "Plaintiff has separately alleged that the Defendant's *'outrageous and intolerable'* conduct *(Compl. ¶ 82)* and '*actions which were intended to cause and did cause Plaintiff's severe emotional distress*' *(Compl. ¶ 83)* constitute a distinct set of facts intended specifically to inflict severe emotional trauma." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 10 (emphasis added)).

(2) "[T]he Complaint alleges that Defendant engaged in '*outrageous and intolerable*' conduct *(Compl. ¶ 82) specifically intended to cause* and did cause Plaintiff severe emotional distress." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 11 (emphasis added)).

(3) "[T]he narrow exception to the gap-filler rule [as] recognized in *Rigazio* and *Childers*—where the defendant's conduct was 'intended only to cause extreme emotional distress in the victim'—is *expressly satisfied* here." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 11 (emphasis added)).

(4) "[T]he Plaintiff's Complaint here specifically alleges that Defendant's actions were '*intended to cause . . . severe emotional distress.' (Compl. ¶ 83)*. At the motion to dismiss

conclusory fashion that Foley's conduct was "intentional," and that it was "so extreme and outrageous as to shock the conscience of a reasonable person under the circumstances[,]" the factual allegations in the Complaint do not suggest that Foley's intent was specifically to cause Blacksmith emotional distress, and certainly do not allege that this was Foley's *sole* intent. (Compl. ¶¶ 84-85); *see Peach*, 675 F. Supp. 3d at 777; *Iqbal*, 556 U.S. at 678. Accordingly, the IIED claim must also be dismissed.

**8. *Malicious Prosecution***

Finally, Blacksmith brings malicious prosecution claims under both Section 1983 and Kentucky state law. (Compl. ¶¶ 41(d), 77-82). Foley does not challenge the timeliness of the malicious prosecution claims, but challenges the "favorable termination" element of each, arguing: "Plaintiff's claim for malicious prosecution fails as a matter of law because the criminal proceeding did not terminate favorably, rather it terminated in a guilty plea—a compromise with the prosecutor." (Def.'s Indv'l Cap. Mot. Dismiss 10).

Under either Kentucky law or the Fourth Amendment, a malicious prosecution claim requires "favorable termination" of the underlying criminal proceedings, though the standards for what meets this requirement are different under each. Under federal law, the U.S. Supreme Court has held that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under [Section] 1983 for malicious prosecution, a plaintiff need only

---

stage, this Court must accept this allegation as true." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 11 (emphasis added)).

(5) "At the motion to dismiss stage, the Court must accept as true Plaintiff's well-pleaded allegations that Defendant *acted with the specific purpose of inflicting severe emotional distress*." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 11 (emphasis added)).

To the contrary, such allegations—including those presented as being quotations, complete with paragraph citations—do not appear anywhere in the Complaint.

show that his prosecution *ended without a conviction*." *Thompson v. Clark*, 596 U.S. 36, 39 (2022) (emphasis added). This holding was based on "the elements of the most analogous tort as of 1871 when [Section] 1983 was enacted," and it resolved a circuit split regarding whether "favorable termination" for such federal claims required only that the criminal prosecution end "without a conviction," or whether it additionally required an "affirmative indication of innocence." *Id.* at 41, 43 (citations omitted).

"*Thompson* did not[, however] change the standard for favorable termination under Kentucky law." *Maqablh v. Heinz*, No. 3:16-CV-00289-RGJ, 2023 WL 6392742, at *2 (W.D. Ky. Sep. 29, 2023), *aff'd sub nom. Al-Maqablh v. Heinz*, No. 23-5935, 2024 WL 5658472 (6th Cir. Dec. 23, 2024); *accord McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *6 (6th Cir. Nov. 22, 2022). "In Kentucky, '[i]f the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.'" *DeHart v. Perkins*, No. 1:22-CV-00013-GNS, 2022 WL 4279729, at *2 (W.D. Ky. Sep. 15, 2022) (alteration in original) (quoting *Davidson v. Caster-Knott Dry Goods Co.*, 202 S.W.3d 597, 605 (Ky. App. 2006)).

Foley takes the position that under either standard, Blacksmith cannot make out a successful malicious prosecution claim because the remaining charges against him were dismissed pursuant to an agreement of compromise—i.e., a plea bargain. (Def.'s Reply Partial Mot. Dismiss 4).[5] Charges dismissed pursuant to a negotiated plea agreement would not be a "favorable

---

[5] To the extent that Foley also suggests that the mere fact of a conviction on *any* charge would defeat a federal claim under *Thompson*'s "ended without a conviction" standard—rather than it being the disposition-by-compromise of the *dismissed charges* which does so—this does not appear to be the prevailing view. (Def.'s Reply Partial Mot. Dismiss 4). First, courts have recognized that *Thompson* did not determine whether a Section 1983 Fourth Amendment malicious prosecution claim could ever terminate in a plaintiff's favor when the prosecution did not end "without a conviction" on *every* charge. *Carruthers v. Colton*, 153 F.4th 169, 183 (2d Cir. 2025);

termination" under Kentucky law. *Ohnemus v. Thompson*, 594 F. App'x 864, 867 (6th Cir. 2014) (citing *Feinberg v. Townsend*, 107 S.W.3d 910, 912 (Ky. App. 2003) (noting that "[i]n order for a termination of proceedings to be favorable to the accused," under Kentucky law, "the dismissal must be one-sided and not the result of any settlement or compromise" ); *Broaddus v. Campbell*, 911 S.W.2d 281, 284 (Ky. App. 1995) ("[I]t is settled that a dismissal by compromise of the accused is not a termination favorable to the accused." (citing Restatement (Second) of Torts § 660(a) (A.L.I. 1977)); Restatement (Second) of Torts § 660 cmt. c ("Compromise. Although the accused by his acceptance of a compromise does not admit his guilt, the fact of compromise indicates that the question of his guilt or innocence is left open. Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor."). Even assuming, without deciding, that such a compromise would also be fatal to the federal Section 1983 claim, dismissal of either claim at this stage is not appropriate, because the fact of a compromise does not appear on the face of the Complaint, is disputed by Blacksmith, and is not sufficiently clear from the exhibits alone.[6]

---

*Alburg v. Jones*, No. 21-2580, 2023 WL 2823895, at *3 n.13 (3d Cir. Apr. 7, 2023). Second, as the Sixth Circuit has noted, at least in relation to the *probable cause* element, the U.S. Supreme Court "has now clarified that courts must take a charge-by-charge approach to malicious prosecution (unlike false arrest). That is, a plaintiff in multicount cases might still have a viable malicious-prosecution claim on one charge even if the plaintiff lacks a viable claim on another one." *Howell v. McCormick*, 148 F.4th 834, 854 (6th Cir. 2025) (citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024)). The Sixth Circuit has also appeared to recognize the possibility of a "favorable termination" on some charges even where there is a conviction on other charges, approvingly citing so-called "mixed-verdict" cases from other circuits. *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1031-33 (6th Cir. 2025) (first citing *Janetka v. Dabe*, 892 F.2d 187, 188 (2d Cir. 1989), and then citing *Kossler v. Crisanti*, 564 F.3d 181, 184 (3d Cir. 2009) (en banc), *abrogated in part by Thompson*, 596 U.S. 36 (2022)) (determining when federal malicious prosecution claim accrued when different charges were disposed of at different times).

[6] The Court is not aware of authority in the Sixth Circuit directly addressing the continued vitality, after *Thompson v. Clark*, of the principle that a "favorable termination" for purposes of malicious prosecution requires that "the dismissal must be one-sided and not the result of any settlement or

**a. Defendant's Exhibits**

Foley frankly admits that his argument for dismissal of the malicious prosecution claims relies on facts not presented in the Complaint: "Plaintiff *leaves out of his Complaint* that he pleaded guilty to Operating on a Suspended/Revoked Operator's License and Speeding, and as a result of his plea deal, his other charges were dismissed." (Def.'s Indv'l Cap. Mot. Dismiss 2 (emphasis added); *see also* Def.'s Indv'l Cap. Mot. Dismiss 10). Foley seeks to have these facts nevertheless be considered, by attaching to his motion as exhibits documents from the state criminal docket. (Def.'s Partial Mot. Dismiss Ex. A, DN 5-3).

Where evidence is presented on a motion to dismiss, a court generally has the discretion to exclude the evidence and rule pursuant to the standards for Fed. R. Civ. P. 12(b)(6), or to convert the motion into one for summary judgment under Fed. R. Civ. P. 56. *Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) (citations omitted); Fed. R. Civ. P. 12(d). Certain documents, however, can be considered without converting the motion, including "public records . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). While such "documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, [however,] it must

compromise." *Ohnemus*, 594 F. App'x at 866; *Jones v. Clark Cnty.*, 959 F.3d 748, 764 (6th Cir. 2020) (adopting the standard applied by *Ohnemus* to a Kentucky state law malicious prosecution claim, for Section 1983 malicious prosecution claims under the Fourth amendment), *abrogated by Thompson*, 596 U.S. 36 (2022). Multiple federal courts examining the issue outside of this circuit have found that similar rules survived *Thompson*, and that charges dismissed pursuant to a negotiated plea agreement continue to be insufficient to support a Fourth Amendment malicious prosecution claim. *See Carruthers v. Colton*, 153 F.4th 169, 183 (2d Cir. 2025); *Davis v. Warren*, 173 F.4th 566, 573 (5th Cir. 2026); *Shorter v. Pulaski Cnty.*, No. 3:25-CV-821-DRL-SJF, 2026 WL 1429004, at *6 (N.D. Ind. May 20, 2026). Nevertheless, because the existence of a compromise in this case is not clearly shown by the pleadings or documents intrinsic thereto, it is inappropriate to finally determine this question at this stage.

also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ouwinga v. Benistart 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (quoting *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012)). Courts may also, on a motion to dismiss, refuse to consider facts contained within public records where the facts are subject to reasonable dispute, or where they present only part of the relevant events. *See Blackwell*, 123 F.4th at 487-88 (citations omitted).

Foley characterizes the exhibits as showing that dismissal of the remaining charges was part of a plea bargain—that is, Blacksmith pleaded guilty to some charge "in exchange for dismissal as merged of the other charges." (Def.'s Indv'l Cap. Mot. Dismiss 12). Blacksmith in his opposition brief appears to concede that he did "enter a plea to a speeding charge," but he refers to the other dismissed charges as "separate felony proceedings," and flatly denies that those charges were dismissed pursuant to a negotiated agreement: "[T]he dismissal here was *unilateral* by the Commonwealth, not a compromise." (Pl.'s Resp. Def.'s Partial Mot. Dismiss 8, 9). While these are not pleaded factual allegations—since they arise in the memorandum opposing the motion to dismiss—neither are Foley's characterization of the exhibits. In considering a motion to dismiss, the Court is required to draw all reasonable inferences in favor of Blacksmith, and the documents do not so unambiguously discredit the possibility of a favorable termination as to merit dismissal at this stage.

*Ohnemus v. Thompson*, 594 F. App'x 864 (6th Cir. 2014), on which Foley relies, does not compel a different result. (Def.'s Indv'l Cap. Mot. Dismiss 12). The Sixth Circuit in *Ohnemus* did affirm the district court's decision to consider, in ruling on a motion to dismiss a Kentucky state law malicious prosecution claim, the Order of Dismissal from the underlying criminal proceedings, which clearly showed that the dismissal had been pursuant to a compromise

agreement to pay restitution, foreclosing a "favorable termination" under Kentucky law. *Ohnemus*, 594 F. App'x at 868-69. The court also noted, however, that "the determination of whether a termination is sufficiently favorable ultimately rests with the trial court as a matter of law, *absent a factual dispute relative to the circumstances of the dismissal*." *Id.* at 866 (emphasis added) (quoting *Davidson*, 202 S.W.3d at 606 (Ky. App. 2006)); *accord Jones*, 959 F.3d at 765 (citing *Ohnemus* and applying the same rule to a Section 1983 malicious prosecution claim). Additionally, the document provided by the defendant in *Ohnemus* was explicitly referred to by title and date in the plaintiff's complaint, and it unambiguously indicated the existence of a compromise in the form of a restitution payment.[7] The plaintiff in *Ohnemus* also did not dispute the critical fact that restitution had been paid, as reflected in the order. *Ohnemus*, 594 F. App'x at 869 n.1.

Faced with Blacksmith's flat denial of the factual existence of a compromise, the lack of a clear and unambiguous correspondence between the "Motion to Dismiss" referred to in the Complaint and any specific document in the exhibits, and the lack of complete clarity in the documents provided, it is not clear that "no discovery [could] alter[] the conclusion that the proceedings did not terminate in favor of" Blacksmith. *Id.* at 869. This "factual dispute relative to the circumstances of the dismissal" makes resolution of "whether [the] termination [was] sufficiently favorable" inappropriate at the present stage. *Id.* at 866 (quoting *Davidson*, 202 S.W.3d at 606); *see also Knowlton v. Shaw*, 708 F. Supp. 2d 69, 75 (D. Me. 2010) ("[I]f the parties

---

[7] (*See* Compl. ¶ 25, DN 1, *Ohnemus v. Thompson*, No. 6:13-cv-00087-KKC (E.D. Ky.) (referring to a "Motion of the Pulaski County Attorney, which motion was granted by Order of the Pulaski District Court on April 27, 2012[,] . . . [and] became a final judgment when it was entered on April 30, 2012."); Def.'s Partial Mot. Dismiss, Ex. A, DN 5-3, *Ohnemus v. Thompson*, No. 6:13-cv-00087-KKC (E.D. Ky.) (a Motion to Dismiss by the Pulaski County Attorney, signed as ordered by the Pulaski District Court on April 27, 2012, stamped as entered on April 30, 2012, and clearly showing that the dismissal was made "upon the defendant paying restitution . . . in the amount of $22,980.00.")).

do not dispute a central document, a court may consider it in ruling on a motion to dismiss; yet, if there is a genuine dispute, the legal sufficiency of the cause of action is better tested in a motion for summary judgment." (citation omitted)).

On the present motion, Foley challenged only the "favorable termination" aspect of the malicious prosecution claims, and this challenge fails at this stage. Accordingly, the motion to dismiss will be denied as to Count I, to the extent that it brings a Fourth Amendment malicious prosecution claim under Section 1983, and as to Count V, the state law malicious prosecution claim. All other counts and claims are dismissed.

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Official Capacity Claims (DN 6) is **GRANTED**;

2. Defendant's Motion to Dismiss Individual Capacity Claims (DN 5) is **GRANTED IN PART** as to Counts I (Section 1983 Fourth Amendment excessive force, false imprisonment, abuse of process), II, III, IV, and VI;

3. Defendant's Motion to Dismiss Individual Capacity Claims (DN 5) is **DENIED IN PART** as to Counts I (Section 1983 Fourth Amendment malicious prosecution) and V.

**Greg N. Stivers, Judge**
**United States District Court**
November 23, 2026

cc: counsel of record